JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Donald J. Sesso

**DEFENDANTS**
Eagleville Hospital

**(b)** County of Residence of First Listed Plaintiff: **Montgomery**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott M. Pollins, Pollins Law, 303 W. Lancaster Ave., Ste. 1C, Wayne, PA 19087, 610-896-9909, scott@pollinslaw.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine / ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | |
| | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | | | |
| ☐ 245 Tort Product Liability | / ☐ 530 General | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | / ☐ 550 Civil Rights | | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
**False Claims Act**
Brief description of cause:
**Whistleblower retaliation**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ Unliquidated
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____  DOCKET NUMBER _____

DATE: 03/25/2020
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**
RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __1624 Gypsy Hill Road, Lower Gwynedd, PA 19002__

Address of Defendant: __100 Eagleville Road, Eagleville, PA 19403__

Place of Accident, Incident or Transaction: __100 Eagleville Road, Eagleville, PA 19403__

---

**RELATED CASE, IF ANY:**

Case Number: __16-6627__   Judge: __Hon. Edward G. Smith__   Date Terminated: __7/31/2019__

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☑  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __3/25/2020__   *Attorney-at-Law / Pro Se Plaintiff*   __PA76334__   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A.  *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
    *(Please specify):* __False Claims Act__

B.  *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Scott M. Pollins__, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __3/25/2020__   *Attorney-at-Law / Pro Se Plaintiff*   __PA76334__   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

Donald J. Sesso          :          CIVIL ACTION
         v.              :
Eagleville Hospital      :          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                 ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                             ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (✓)

3/25/2020        Scott M. Pollins            Plaintiff, Donald J Sesso
Date             Attorney-at-law             Attorney for
610-896-9909     610-896-9910                scott@pollinslaw.com
Telephone        FAX Number                  E-Mail Address

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONALD J. SESSO**, | : | |
| Plaintiff, | : | CIVIL ACTION NO.: |
| | : | |
| v. | : | |
| | : | |
| **EAGLEVILLE HOSPITAL**, | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

## COMPLAINT

### I. INTRODUCTION

1. Plaintiff, Donald J. Sesso (Sesso), brings this whistleblower retaliation action under the False Claims Act (FCA), 31 U.S.C. Sections 3729 and 3730, and the Pa. Whistleblower Law (PaWBL), 43 P.S. Sections 1421-1428, against Defendant, Eagleville Hospital (Eagleville), for terminating Sesso in retaliation for complaints he made about patient safety.

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 and 31 U.S.C. § 3730(h). Furthermore, Eagleville's conduct with regard to Sesso violated the PaWBL, and the pendant jurisdiction of this Court is invoked to remedy those violations.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b).

### III. PARTIES

4. Sesso, is an adult individual residing in Lower Gwynedd, PA.

5. Eagleville is a Pennsylvania non-profit corporation located at 100 Eagleville Road, Eagleville, PA 19403.

6. Eagleville provides inpatient and residential treatment for substance abuse, medical, psychological, psychiatric and co-occurring disorders and research, training and education services to professional and local communities.

7. Eagleville has about 300 patient beds, receives about 5,500 patient admissions per year and provides about 97,000 treatment days per year.

8. For Fiscal Year 2017 (7/1/17 – 6/30/18), Eagleville had about $42,000,000 in revenue, received about $30,000,000 from the U.S. Government through Medicare and received about $7,000,000 from the Commonwealth of Pennsylvania through Medicaid. Eagleville provided about $120,000 to Pennsylvania's Department of Human Services for medical assistance, and Eagleville received about $2,400,000 in contributions from Pennsylvania's Department of Public Welfare.

**IV.   FACTUAL BACKGROUND**

9. At all times relevant to this Complaint, Sesso was employed by Eagleville as a physician to provide inpatient and non-hospital residential professional medical services and certain medico-administrative duties.

10. Sesso worked for Eagleville from March 2010 through January 2020.

11. For the first about six years Sesso worked at Eagleville, he worked five days per week and about 20-25 hours per week. For the last 2 ½ - 3 years he worked at Eagleville, Sesso worked about 15 hours per week. Eagleville paid Sesso an hourly rate, which was $90/hour as of late 2019.

12. Scheduling Medical Staff Coordinator Laurie Dallas knew that Sesso was available to work additional hours if needed. Several years ago, Ms. Dallas told Sesso that Eagleville needed to keep him and Dr. Erini Poggio, another part-time physician,

because of the frequent staffing and safety problems that arose when physician turnover occurred. Ms. Dallas told Sesso that the Eagleville's then CEO, Maureen Pollock, was aware of the need for part-time physicians and agreed that Sesso and Dr. Poggio were important and critical staff for Eagleville.

13. During the last five years Sesso was at Eagleville, there was frequent turnover of full-time hospital physicians. During these years, Sesso and Dr. Poggio agreed with Ms. Dallas that they would adjust their schedule to help accommodate as physician turnovers occurred.

14. In March 2019, Eagleville's Medical Executive Committee submitted a letter to Eagleville stating:

> The Medical Executive Committee has not approved the position of CMO due to multiple irregularities both in substance and procedure that are in blatant violation of our hospital bylaws.
>
> The Medical Executive Committee is determined to confront and expose the careless and wasteful spending and hiring practices which have eroded our ability to director resources where they are legitimately needed to provide care for our patients.
>
> The physicians are unanimous in their pledge to advocate for all disciplines to have an input in decision-making processes, and to ensure that our institution is run in an ethical and responsible manner, and that our bylaws are respected and followed.

15. Although Sesso was not a member of the Medical Executive Committee, he agreed with the March 2019 letter submitted by the committee to Eagleville.

16. In July 2019, Eagleville agreed to pay $2,850,000 to settle a False Claims Act case brought by a whistleblower working with the U.S. Department of Justice (*United States of America, ex. rel. Christopher M. Smith v. Eagleville Hospital*, E.D.Pa. Civil Action No. 16-6627). The whistleblower alleged that Eagleville violated the FCA by

submitting claims to Medicare, Medicaid, and the Federal Employees Health Benefits Program for hospital-level detoxification treatment services when the patients were ineligible for admission to receive such services or lacked documentation to support the claims. As part of the settlement, Eagleville also entered into a five year Corporate Integrity Agreement (https://oig.hhs.gov/fraud/cia/agreements/Eagleville_Hospital_07242019.pdf) with the Office of Inspector General (OIG) of the United States Department of Health and Human Services (HHS), which required, among other things, the hiring of a compliance officer, the establishment of a compliance committee, written policies and procedures regarding the operation of the compliance program, and the implementation of a risk assessment and internal review process designed to identify and address evolving compliance risks on an ongoing basis.

17. In about August 2019, there was a mass exodus of Eagleville physicians resigning from Eagleville.

18. On September 17, 2019, Sesso emailed Donna Ambrogi, Director of Nursing, Judy Seyedroudbari, Director of Pharmacy, and Dr. Nathaniel Abramson, a physician who had just started working at Eagleville. In his email, Sesso conveyed his concerns about the lack of rules and procedures, including a) medical personnel's awareness of risks of nsaids and noacs when platelets are low and that they should document reasoning when used, b) medical personnel's awareness that anti-convulsants like Keppra and Dilantin do not help withdrawal seizures but may be needed for coexistent epilepsy or if reasonable suspicion, c) minimizing phenobarbital use, d) do not order venous ammonia levels, and e) stipulate how many bowel movements are needed when using lactulose for

4

Hepatic encephalopathy. Sesso also expressed concerns about AMA discharge patients needing physician exam note or at least case review note of discussion with nurse, avoiding medication for outpatient narcotics or bzd's unless highly unusual circumstances are documented and be extra careful with bzd and insomnia meds during methadone taper.

19. On October 1, 2019, Sesso emailed Sharmil McKee (McKee), Chief Legal Officer. In his email, Sesso stated that there was a major change in the physician staff in August and he needed to know who is the new chair of staff, who is on the medical executive committee and who is responsible for supervision of nurse practitioners and physician assistants.

20. McKee responded to Sesso's request by saying that "Gene will take care of your request, so I forwarded your email to him. Have a wonderful day."

21. Also on October 1, 2019, Ott emailed Sesso as follows:

Dr. Sesso –

Thank you for sharing your concerns with our new Compliance Officer. We are continuing to address the transition of our medical staff and are actively working through the process to appropriately define the roles and responsibilities of our providers along with the respective physician leadership required to best support the goals and objectives of the organization. At this juncture no decisions have been finalized regarding leadership and committee membership. Collaborative agreements have been established with all current CRNP and Pa staff.

As we work through this transition period any future concerns you have regarding the medical staff are best directed to my attention. By copy of this email Tracey will be reaching out so we may speak in person regarding these matters.

22. Although Ott apparently believed that McKee was Eagleville's Compliance Officer, she was not. Her email signature block as of October 1, 2019 said she was

5

Eagleville's Chief Legal Officer. Additionally, the July 2019 CIA Eagleville entered into with OIG stated as follows:

> Within 90 days after the Effective Date, Eagleville shall appoint a Compliance Officer and shall maintain a Compliance Officer for the term of the CIA. The Compliance Officer shall be an employee and a member of senior management of Eagleville, shall report directly to the Chief Executive Officer of Eagleville, and shall not be or be subordinate to the General Counsel or Chief Financial Officer or have any responsibilities that involve acting in any capacity as legal counsel or supervising legal counsel functions for Eagleville.

23. McKee could not have been Eagleville's Compliance Officer because she served in a legal counsel capacity. Additionally, as of filing this Complaint and according to Eagleville's website (https://www.eagleville.org/about-us/leadership-team/, accessed 3/21/2020), McKee is not listed as a member of the leadership team at Eagleville nor is any Compliance Officer listed as a member of the leadership team.

24. On about October 3, 2019, Sesso met with Ott. During their meeting, Sesso told Ott about the various issues he had serious concerns about. Sesso told Ott that they need more physician coverage and there is a patient safety issue because there are not enough doctors to effectively care for all of the patients.

25. During this meeting, Ott did NOT inform Sesso that Eagleville was changing its staffing model. In fact, Ott spoke with Sesso about him teaching or taking on administrative duties in addition to working as a physician.

26. Prior to his meeting with Ott, Sesso had been regularly scheduled to work at Eagleville for about 15 hours per week for the past about three years. After Sesso met with Ott, Eagleville removed Sesso from the schedule and did not schedule him for any hours to work.

27.  On October 17, 2019, Sesso emailed Ott as follows:

Hello Gene,

It has been 2 weeks since our meeting I have emailed Dr. Abramson once each week. I have advised him of our meeting. I told him that I and Dr. Poggio would prefer to continue helping on a part-time coverage basis. He has not yet responded. I also notified Tricia of my interest.

Dr. Poggio and I are both certified internists (hospitalists) with several years of addiction care experience. We believe there is a need for more than 1 physician in D'Arclay and that peer review is essential for all of us.

We would appreciate if you would follow up with Dr. Abramson and us.

Sincerely,

Don Sesso, D.O.

28. On October 22, 2019, Sesso emailed Joanne Elder (Elder), staff nurse, informing her he had not been scheduled for a few weeks and he felt that his and Dr. Poggio's experience and credentials would be valuable.

29. Elder responded to Sesso and said:

Sorry to hear that! Dr. Abramson has been covering both East and West and sometimes pts aren't dosed with Methadone until noon or after. May start writing incident reports as this is delay in pt. care … Hope to see you soon.

30. On October 29, 2019, Sesso had still not been scheduled to work any hours by Eagleville since he complained to Ott and McKee. Sesso decided to submit an anonymous complaint to the Joint Commission on Accreditation of Healthcare Organizations (JCAHO or The Joint Commission). Founded in 1951, The Joint Commission seeks to continuously improve health care for the public, in collaboration with other stakeholders, by evaluating health care organizations and inspiring them to excel in providing safe and effective care of the highest quality and value. The Joint Commission evaluates and accredits more than 22,000 health care organizations and programs in the United States.

7

31. In his anonymous JCAHO complaint, Sesso stated that Eagleville was operating at an unsafe level of care and supervision due to a large majority of the physician staff quitting in a dispute with the administration. Sesso stated that patients who are suffering from narcotic withdrawal are delayed several hours before receiving methadone, nurses are upset and frustrated and the lack of a medical governing body and certified additional officers are violations of JCAHO standards.

32. On November 8, 2019, Sesso exchanged emails with Connie Mario, nurse practitioner.

> Hi Connie,
>
> Thanks for your reply. I am sorry that you are leaving. I am so concerned over the decimation of our staff since August. In my 49 yrs. as a physician, I have never witnessed such a calamity in a staff. I would like to speak with you sometime in the near future.
>
> Best wishes,
>
> Don Sesso, D.O.
>
> …………………………………………………………………
>
> Myself included. I have never worked for an organization like this. Erini does not know that I have submitted my resignation however she was aware I was seeking another opportunity. I do not have another job yet but working on it and will leave w/o employment because this place is unsafe. Please feel free to reach out to me.
>
> Connie Mario

33. On January 1, 2020, Elder emailed Sesso as follows:

> Happy New Year from all of us at 2E. I brought up to Donna Ambrogi if you and Dr. Poggio had quit as we have not seen you and she said no. Then I asked her why we were not utilizing you and Dr. Poggio and she did not answer. I don't think they want to put out the money. Dr. Abramson is overwhelmed with all the pts he is seeing. It's crazy here and I am quitting in May. Hope you have a great year!
>
> Joanne

34. On January 23, 2020, Sesso received an email containing a letter dated January 14 from Ott. The letter stated that Eagleville was terminating Sesso's employment without cause. Ott also claimed that the letter was 60 days' notice, however Ott said "we do not anticipate having need for your services during this period."

35. On February 12, 2020, Eagleville mailed Sesso a letter it back-dated to February 7. Sesso received the letter on February 14. The letter was from Elizabeth A. Perrong, Vice President of Human Resources. In her letter to Sesso, Ms. Perrong acknowledged that Sesso had complained about the following to McKee:

    a. Eagleville does not have a Medical Director or Medical Staff Committee Chair and theses vacancies may violated Eagleville's by-laws and state regulations.

    b. Eagleville has one physician caring for all hospital-level patients and this is insufficient to treat patients safely.

    c. Sesso reported these concerns to Eagleville's CEO, Ott, and in response to this complaint, Eagleville retaliated against Sesso and reduced his work schedule.

36. Sesso submitted complaints to Eagleville about patient safety, compliance issues (including whether Eagleville was complying with the CIA), and Eagleville's failure to follow its own medical staff by-laws. These complaints dealt with gross management of a federal contract or grant, gross waste of federal funds, abuse of authority relating to a federal contract or grant, substantial and specific danger to public health or safety or violations of Medicare or Medicaid and the allegations contained in the *Smith* FCA case (EDPa No. 16-6627).

37. Sesso made these complaints to Eagleville officials (Ott and McKee) who had the responsibility to investigate, discover or address misconduct at Eagleville.

38. At the time Sesso was making these complaints, Eagleville was subject to the CIA which required, among other things, for Eagleville to have a Compliance Officer and compliance committee. Accordingly, Sesso's complaints were also based on Eagleville's failure to comply with the CIA.

39. Sesso's complaints to Eagleville constituted complaints that Eagleville was engaging in conduct prohibited by the False Claims Act (FCA), 31 U.S.C. Section 3729.

40. Eagleville is an employer or public body within the meaning of the Pa. Whistleblower Law. 43 P.S. Section 1422; *Denton v. Silver Spring Nursing & Rehabilitation Center*, 735 A.2d 571, 576 (Pa. Super 1999). Eagleville receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body. Eagleville is funded by or through the Commonwealth of Pennsylvania or political subdivision authority or a member or employee of that body. Upon information and belief, Eagleville received federal, state, and private funding to deliver patient care. Upon information and belief, Eagleville provided grant awards for medical research, capital improvements, or patient services and prevention to the federal government, state government and foundations.

41. Sesso is an employee within the meaning of the Pa. Whistleblower Law. 43 P.S. Section 1422.

42. As described above, Sesso is a whistleblower who made repeated good faith reports of conduct he reasonably believed constituted wrongdoing or waste within the meaning of the Pa. Whistleblower Law. 43 P.S. Section 1422.

43. Sesso's complaints of wrongdoing included failing to properly staff Eagleville with sufficient medical personnel to care for its patients and dangerous delays in providing medication and proper care to patients.

44. Sesso's complaints of waste included Eagleville's conduct or omissions including lack of sufficient medical personnel to care for patients and lack of supervision of medical personnel, both of which can result in patient safety being jeopardized; and substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from the state or other sources.

V.   **CLAIMS**

**Count I – Pa. Whistleblower Law**

45. Paragraphs 1-44 are incorporated by reference as if fully set forth herein.

46. The acts, failures to act, practices and policies of Eagleville set forth above constitute whistleblower discrimination/retaliation in violation of the Pa. Whistleblower Law.

47. Eagleville violated the Pa. Whistleblower Law by terminating Sesso in retaliation for his whistleblower complaints.

48. As a direct and proximate result of Eagleville's illegal retaliatory conduct, Sesso has suffered damages in the form of lost compensation and benefits and emotional distress including, but not limited to, anxiety, stress, humiliation, career damage and embarrassment.

**WHEREFORE**, Sesso respectfully requests this Court enter judgment in his favor and against Eagleville for the full amount of his damages, including lost compensation and benefits, reinstatement of employment, interest, actual damages for emotional and mental

stress, anxiety, embarrassment and humiliation, negative tax consequence damages, career damage, attorney's fees and expenses, and such other relief as the Court deems proper in an amount in excess of $150,000.

### Count II – FCA

49. Paragraphs 1-44 are incorporated by reference as if fully set forth herein.

50. The acts, failures to act, practices and policies of Eagleville set forth above constitute whistleblower discrimination/retaliation in violation of the FCA.

51. Eagleville violated the FCA by terminating Sesso in retaliation for his whistleblower complaints.

52. As a direct and proximate result of Eagleville's illegal retaliatory conduct, Sesso has suffered damages.

**WHEREFORE**, Sesso respectfully requests this Court enter judgment in his favor and against Eagleville for the full amount of his damages, including two times his past or back lost compensation and benefits, reinstatement of employment or future or front lost compensation and benefits, special damages for emotional and mental stress, anxiety, embarrassment, humiliation and career damage, negative tax consequence damages, interest, attorney's fees and expenses, and such other relief as the Court deems proper pursuant to 37 U.S.C. Section 3730(h) and in an amount in excess of $150,000.

                Respectfully submitted,

By:    SMP2861
      Scott M. Pollins/ Pa. Atty. Id. No. 76334
      **Pollins Law**
      303 W. Lancaster Ave., Ste. 1C
      Wayne, PA 19087
      (610) 896-9909 (phone)/(610) 896-9910 (fax)
      scott@pollinslaw.com (email)

Date:   3/25/2020      Attorney for Plaintiff, Donald J. Sesso